On Rehearing.
White, J.
Section one of act No. 8 of 1875, acts of 1875, page 107, provides as follows :
“ That any and all cotton and woolen factories and mills or establishments for the manufacture of cotton or woolen yarns, which are *443 how in operation or which shall be put in operation at any time within .five years from the passage of this act, whether by an individual or firm ■or incorporated company, shall upon payment of one hundred dollars .at the beginning of each year to the State, and one hundred dollars to the city or parish in which said factory is situated, be exempt from further State, parish, and municipal taxation for a period of twenty .years from the commencement of operations, and no other State, parish, or municipal tax shall be assessed, levied, or collected during the whole ■or such part of the time as said mills or factories shall be used for the .purposes hereinbefore specified on the capital invested or employed in ■the production of said articles, nor on any lands, buildings, machinery, property, franchises, or appurtenances used therefor or therewith and ■necessary thereto.”
Section two provides for notice by the corporation or individual of the commencement of the operations, mentioned in the preceding section, to the Auditor of Public Accounts.
Section three is as follows:
Sec. 3. Be it further enacted, etc., That whenever any individual ■or individuals or incorporated company shall within said period of five years avail himself or themselves of the benefits and advantages conferred by this act, and shall bona tide commence the business of -manufacturing as above indicated, the commutation and immunities granted by this aet shall be in the nature of a contract not to be defeated.
Under these provisions the issues presented are whether the mandate of- the constitution, found in article 118, saying “the General Assembly shall have power to exempt from taxation property actually used for church, school, or charitable purposes,” strikes with constitutional nullity the provisions of the aet of 1875 already quoted — and if not, whether the act of 1875 violates the terms of the same article, saying “ that all property shall be taxed according to value.” With these issues the matters for consideration may, we think, be analyzed and determined by examining and answering the following questions :
1. Does the provision of the constitution, as to exemption, contain an enumeration, and hence a limitation on the power of the General Assembly to exempt from taxation ?
2. If so, does the act of 1875 create an exemption ?
3. If not, is the act of 1875 a specific tax, and therefore a violation •of the ad valorem rule as expressed in the constitution ?
First — That the grant of power to the General Assembly to exempt property actually used for church, school, or charitable purposes, is an enumeration, and hence an exclusion of the power to exempt all property not included in its terms, is now the settled jurisprudence. We recently so held in City vs. St. Anna’s Asylum, ante page 292, and our *444 conclusion in that case was founded on an unbroken current of authority. City of New Orleans vs. Bank of Lafayette, 27 An. 276; City vs. Metropolitan Loan and Savings Bank, 27 An. 646 ; City of New Orleans vs. People’s Bank, 27 An. 648 ; City vs. St. Charles R. R., 28 An. 498 ; City vs. St. Patrick’s Hall, 28 An. 512 ; City vs. Lafayette Insurance Co., 28 An. 756.
This line of adjudicated cases is strenuously attacked as ill-considered and not founded. As a general rule, we would rest content under such circumstances by applying the doctrine of stare decisis in so grave matter as this is, involving the validity of a grant by the Legislature; but because of the earnestness and ability with which the views of counsel have been presented, as well as on account of our former opinion, in which we held the power of exemption to be unrestricted, which we have concluded' was erroneous, we will not be content with invoking stare decisis, but will review the jurisprudence in order to demonstrate the correctness of the theory upon which it is founded. No two principles are more elementary, in construing State constitutions, than those teaching that every power not denied exists, and that where a power, which would if not denied exist, has the methods of or instances when it may be exercised enumerated and defined, the existence of the enumeration is a restriction on the exercise of the power to the cases covered by thd enumeration.
The rule is thus stated by Judge Cooley in his work on Constitutional Limitations : “ Plenary power in the Legislature for all purposes of civil government is the rule. A prohibition to exercise a particular power is an exception. In inquiring, therefore, whether a given statute is constitutional, it is for those who question its validity to show that it is forbidden. I do not mean that the power must be expressly inhibited, for there are but few positive restraints upon the legislative power contained in the instrument. The first article lays down the ancient limitations, which have always been considered essential in a constitutional government, whether monarchical or popular ; and there are scattered through the instrument a few other provisions in restraint of legislative authority. But the affirmative prescriptions and the general arrangements of the constitution are far more fruitful of restraints upon the Legislature. Every positive direction contains an uielication against every thing contrary to it, or which would frustrate or disappoint the purpose of that provision.” P.87.
And, again : “Another rule of construction is, that when the constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition or to extend the penalty to other cases.” P. 64.
*445 In fact, as instruments of construction, these rules have become truisms, and furnish the light by which courts and authors have uniformly guided their judgments and opinions along the narrow and perilous paths of constitutional interpretation. Reading by these rules the declaration that “ the General Assembly shall have power to exempt from taxation property actually used for church, school, or charitable purposes,” how else can it be qualified than as an enumeration ? The power to exempt would have been all extensive without expression. Is not, therefore, the grant of the power, for the words are “ shall have power,” in particular and specified instances by necessary, by inevitable, by overwhelming inference, a limitation on the exercise of the power other than as specified? Boundless, indeed, would be the field of inquiry if not thus limited. Eor instance, the constitution has called this court into being and fixed the salaries of its members; shall we say that all powers not being denied, therefore because the words in the constitution fixing the salary do not say only that the legislative power to increase at will exists, or conversely speaking, that because the words “ not less” are absent, that the right to decrease at pleasure can be availed of ? Carry the illustration to the other departments of government, and the conclusion seems irresistibly certain, that not only fatal to government but to society and human happiness would be the departure by courts from the familiar rule easpressio uniiis est easclusio alterius, with reference to which the constitutions of all the States of this Union have been adopted and construed for so many years. Nor do these views necessarily conflict with those expressed by this court in the cases New Orleans vs. Fourchy, 30 An. 910, or New Orleans vs. Davidson & Hill, 30 An. 554. Iti those cases, whatever may have been the words in which the thoughts were conveyed, we held in effect —
1st — That the rule of equality and uniformity was not violated by the exclusion from the objects of taxation of five hundred dollars of household and kitchen furniture, operating from the fact of its being an exclusion upon every class of society or condition of life. We say exclusion, because as justly remarked by Judge Cooley in his recent work on Taxation, “ some of these, such as the exemption of household furniture, tools of trade, etc., and the limited personal property which very poor persons may be possessed of, are to be looked upon rather as beiog in the nature of limitations of the general rule than as exceptions from it. The taxation is only over and above what is absolutely needed for the owner’s support.” P. 130.
2d — That even if the provision that “ all property shall be taxed according to value” was mandatory in directing that all property should be taxed, as it did not contain an enumeration of the objects of taxation it left necessarily scope to legislative discretion in defining such *446 objects, which discretion was not transgressed by the exclusion from.', the definition of the objects of taxation $500 of household furniture.
Be this, however, as it may, our opinion in the present case is not’ predicated on the postulate that all property must be taxed, but that when property is taxed and comes within the general limit of the objects of taxation the only power delegated to the General Assembly to* exclude either persons or classes from the general rule by it adopted is-found in the constitution, that is, property “actually used for church,, school, or charitable purposes.” This may be illustrated by saying that if the constitutional provision were as follows : “ The General Assembly may fix and define the objects of taxation, and shall have power-after so fixing to exempt property actually used for church, school, or charitable purposes,” we would consider an exemption of property included within the defined objects, but not embraced by the enumerated’ power to exempt, as violative of the-constitution. For the power to-define the objects of taxation would be one thing, and that of exempting from the limits as defined and fixed another. The one is the right to say generally the line where taxation begins, the other to deflect that general line as marked by general laws, so as to exclude individuals or classes from their operation. The right to make general laws and the authority to exclude individuals from them, when made, differ in their nature and efféct — in their nature, because the essence of just legislation is universality; in their effect, because universality creates no-contract, and leaves the powers of government to be transmitted unimpaired to each successive repositary of legislative authority. Exemption,, on the contrary, under given conditions enters the domain of contract and contains the germ of destruction to result from the exercise by an agent, the duration of whose mandate is limited, of the power to contract for an immunity which survives the life of the mandatary and divests- the people for the future of an essential faculty of government, the right to-tax.
The argument as to the power of tho General Assembly to further-wise purposes by a judicious use of the right to make exemptions is not cognizable by judicial tribunals. It suffices for them that the constitution has spoken. But if the judicial mind could so forget its duty as to-allow arguments of expediency to enter the scales of justice against the letter of the constitution, it could but be admonished by the history of modern society of the fallacy of the alleged expediency; it could not fail to compensate the possible instrumentality for good of the power to exempt, against the certainty of harm to flow from its untramm-eled use, harm creating favored classes and property, and which imports the power to abdicate the very essence of sovereignty and of all just government, a uniform, equal, and unexempted bearing of the public burdens. *447 If, as we are told, the inhibition of the power to exempt is divesting the General Assembly of its just authority, we can not fail to see that it is. a divestiture in the interest of society to prevent the contractual abandonment of an equally sovereign power against society and in the interest of selected persons or classes.
Third — The power to exempt not being within the legislative authority, except as to enumerated classes, does the act of 1875 create an exemption not covered by the constitutional provision ? Certainly, the property is not either church, school, or charitable, and equally certain is it that the right not to pay taxes is an exemption from taxation. The law conferring the right so defines it; “shall be exempt from taxation” is the language of the statute. But it is said the property is not exempt from taxation; the taxes are simply commuted. That the power to commute is forbidden by the denial of the power to exempt has been determined. City vs. Lafayette Insurance Co., 28 An. 756; City vs. St. Charles Company, 28 A. 498.
It seems obvious that these decisions are founded on reason, for the right to commute being simply an incident of the power to exempt, the-negation of one is the denial of the other. The books, so far as we have been able to examine them, are singularly deficient in definitions of tho-right to commute. Defined from several points of conflicting thought, it may, we think, be said to be “ a payment of a designated sum for the-privilege of exemption, or the selection, in advance, of a specific sum in lieu of an ad valorem tax.” If the first, it is indubitably an exemption ; if the second, and this covers the third inquiry proposed, then it is a-specific tax, and hence violates the rule of ad valorem, which prescribes-that all property shall be taxed according to value. Either point of the dilemma is fatal to the plaintiffs pretensions.
For these reasons, we think our former decree erroneous. It is-therefore set aside, and the judgment below is affirmed with costs.